UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

**Amanda Beyer**

**On behalf of Herself and
all others similarly situated,**

    **Plaintiffs**

    **v.**                                        **Case No. 21-cv-514**

**Michels Corporation,**

    **Defendant.**

# COMPLAINT

Plaintiff, by her attorneys, for her Complaint against Defendant state as follows:

1. This is an individual and collective action under the Fair Labor Standards Act, as well as an individual and class action under Wis. Stat. §103.02 and §109.03(1) and (5) against Defendants Michels Corporation to recover on behalf of both Beyer and all similarly situated Michels employees all straight time and overtime pay that were not paid because Michels failed to use their Fleetfocus punch in times to compute their compensation; and failed to include annual bonuses in computing their regular rate for overtime pay. Michels additionally violated the FLSA and Wisconsin law because it should have yet failed to pay to the Plaintiff for meal breaks that were interrupted because she had to help others obtain parts in the warehouse that she worked during her scheduled meal breaks.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq; as well as

supplemental jurisdiction over the Plaintiff's claims that arise under Wisconsin law, which are based on the same nucleus of operative facts that Michels failed to use Fleetfocus punch times to compute its employees' compensation, failed to include annual bonuses in computing its employees' regular rates, and failed to pay Beyer for her interrupted meal breaks.

3. This Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because they are subject to the jurisdiction of a court of general jurisdiction in the State of Wisconsin, while the Eastern District of Wisconsin is located within Wisconsin.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because Defendants reside in, while all of the events at issue in this lawsuit concerning Beyer occurred in the Eastern district of Wisconsin.

**THE PARTIES**

5. Named Plaintiff Amanda Beyer was employed as an Inventory Specialist at Michels' corporate headquarters in Brownsville, Wisconsin. In that capacity Beyer's work included, but was not limited to, obtaining inventory for individuals who came to the warehouse that she worked in. Beyer's FLSA consent form is attached to this Complaint.

6. Defendant Michels is a Wisconsin Corporation with locations throughout the United States. Both its corporate headquarters and its registered agent are located within this District at Brownsville, Wisconsin.

7. Defendants by virtue of their employing activities and operations within Wisconsin constitutes employers within the meaning of Wis. Stat. 109.03(1). Defendants are engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. 203, by, for example, operating offices in multiple states, receiving and distributing inventory received from other states,

and performing construction work throughout the United States. At all relevant times, each Defendant has had annual gross volume of business at or above $500,000.

## FACTS

8. Even though Beyer was normally scheduled to work at 6 a.m., no one ever told Beyer that she was not allowed to start work early. In order to keep up with her work responsibilities Beyer regularly started work 30 to 45 minutes before her regular scheduled start time of 6 a.m. Beyer regularly witnessed other employees starting work as soon as they arrived, rather than waiting until their scheduled start times either at the top of an hour, or 15 minutes, 30 minutes, or 45 minutes after the start of an hour.

9. At the beginning of each shift Beyer must either turn on or log onto her computer and then access Fleetfocus software to sign in. If Beyer was logged out of the Fleetfocus software when she signed onto or started her computer, she would have signed onto the Fleetfocus software before she could sign in on Fleetfocus. Beyer's sign-in on Fleetfocus generates a time stamp of her start time that Michels could access.

10. Beyer is required to utilize Fleetfocus software on her computer throughout her workday to perform her work for Michels, so that her time spent accessing her computer and accessing Fleetfocus software is integral and indispensable to her performance of principal activities for Michels.

11. Upon information and belief all non-union employees of Michels, even if they do not need to use a computer or Fleetfocus during the workday, must sign-in on Fleetfocus software at the beginning of each workday.

12. In addition to signing in on Fleetfocus software, at the beginning of each day Beyer also had to sign on a form to verify that she was not suffering from any work-related injuries. It

3

would have been possible for Beyer to sign the form and note on the form the exact time that she signed the form, immediately before she began to turn on and/or log onto her computer.

13. Before approximately February of 2020, Beyer was also required by her supervisor to enter into a different computer program the number of hours that she worked each day. On workdays when Beyer was scheduled to work from 6 a.m. to 5 p.m. the supervisor instructed Beyer to enter 10.5 hours worked per day no matter when she actually started to work each day.

14. After February of 2020 Beyer continued to logon each day on Fleetfocus software but was no longer required to enter her hours worked on any other computer program, although she could sometimes see her supervisor entering employee work hours on another computer program. After February of 2020 Beyer continued to be paid based on her scheduled work hours rather than based on the earlier times when she punched into Fleetfocus.

15. Had Beyer signed a form that noted the exact time immediately before she started to turn on and/or log onto her computer, it would not have taken her supervisor any additional time to enter the time noted on the form into Michels' computer programs as her start time.

16. Even though it either knew or should have known that employees were punching in on Fleetfocus before their scheduled start times, Michels accepted the benefits of the employees' additional work without investigating whether employees were in fact working as soon as they punched in on Fleetfocus software.

17. Michels neither promulgated nor enforced any work rules that prohibited its employees from starting work before their scheduled start times.

18. Beyer regularly worked and was paid overtime for working more than 40 hours per week, so that using her Fleetfocus punch in times to compute her worktime would have increased her number of hours worked over 40 per week.

4

19. Upon information and belief, at the end of each year Michels paid a bonus to each and every one of its hourly employees, except upon information and belief to the extent paying such a bonus would be inconsistent with a collective bargaining agreement covering its union employees.

20. For her paid overtime hours worked Beyer received pay at exactly 1.5 times her hourly rate, so that the annual bonus was not included in computing her regular rate for overtime pay.

21. From the beginning of her employment, Beyer was scheduled to take lunch from 12 p.m. to 12:30 p.m., so that each of her direct supervisors knew that Beyer was supposed to take lunch from 12:00 p.m. to 12:30 p.m. each day.

22. Beyer's meal breaks were often interrupted because she would assist someone who came to the warehouse during her meal break to obtain inventory and to log the supplied inventory into the Fleetfocus software, if necessary.

23. Beyer's supervisors often told her to expect someone to come to the warehouse between 12:00 p.m. and 12:30 p.m. so that she could assist them to obtain inventory. On these occasions Beyer's supervisors never told her that she should take her meal break during a time period other than between 12:00 p.m. and 12:30 p.m.

24. There were times when Beyer's supervisors were in the warehouse and witnessed and/or even assisted Beyer in obtaining inventory for someone coming to the warehouse during the 12:00 p.m. to 12:30 p.m. time period.

25. There were days when Beyer's meal break was interrupted, so that she did not have sufficient time before or after the interruption to comfortably eat a meal without interruption.

5

26. No one ever informed Beyer that if her meal break was interrupted, she should extend her meal break so that she received an uninterrupted meal break of 30 minutes in duration.

27. Beyer in fact would always start her meal break at 12:00 p.m. and return to work by 12:30 p.m. at the latest regardless of whether her meal break had been interrupted.

28. No one ever told Beyer that she should either report interrupted meal breaks to her supervisor, or in any other way report to Michels that her meal breaks had been interrupted.

29. 30 minutes would be deducted from Beyer's worktime for each and every one of her workdays, including days when Beyer's supervisor was at the warehouse, and witnessed that Beyer's 12:00 p.m. to 12:30 p.m. meal break had been interrupted.

## COLLECTIVE ACTION ALLEGATIONS

30. Beyer brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other hourly non-exempt Michels employees in the United States who would either punch in on Fleetfocus or similar software at the beginning of each day or received an annual bonus each year.

31. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to Beyer and have claims similar to her first claim for relief; in that the Court can determine on a uniform basis whether the Fleetfocus punch ins gave Michels actual or constructive knowledge that its employees were starting to work before their scheduled start times, as well as whether annual bonuses that are paid as a matter of course each year must be included in the regular rate used to compute overtime pay.

32. The claims of Beyer are representative of the claims of members of the proposed collective action in that she would punch in on Fleetfocus before her scheduled start time, that she

6

would start work as soon as she punched in on Fleetfocus, that she would have received more overtime pay had her Fleetfocus punch in times been used to compute her hours worked, and in that the annual bonuses she received were not included in computing her regular rate for overtime pay.

## CLASS ALLEGATIONS

33. Plaintiff seeks to represent the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All hourly non-exempt employees employed by Michels in Wisconsin during the time period between April ___, 2019 and the date the Court grants class certification who either (a) punched in on Fleetfocus or other similar software at the beginning of their work days; or (b) received annual bonuses that were not included in computing their regular rate for overtime pay.

34. The persons in the class identified above are so numerous that joinder of all members is impracticable. Since Michels maintains six separate facilities in Wisconsin including its corporate headquarters, there are hundreds of members in each proposed subclass.

35. These are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a) Whether the Fleetfocus punches gave Michels actual or constructive notice that its employees were starting work before their scheduled work times;

(b). Alternatively, whether the employees' activity of signing onto and/or starting their computers was itself a principal activity, so that Michels by knowing when its employees logged onto Fleetfocus each day knew when its employees started work each day;

(c). Whether bonuses that are paid every year to each hourly employee unless prohibited by a collective bargaining agreement are non-discretionary, so that the bonuses must be included in computing the employees' regular rate used to compute their overtime pay;

(d) The appropriate methodology to compute class wide straight time and overtime pay damages under Wisconsin law.

36. Beyer's claims are typical of the claims of members of each of the subclasses that she seeks to represent, in that she would punch in on Fleetfocus before her scheduled start time, in that she would start work as soon as she punched in on Fleetfocus, in that she would have received more overtime pay had her Fleetfocus punch in times been used to compute her hours worked, and in that the annual bonuses she received were not included in computing her regular rate for overtime pay.

37. Beyer will fairly and adequately protect the interests of the Rule 23 class; and has retained counsel experienced in complex wage and hour litigation.

38. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants' common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members at several thousand dollars per year are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation, while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about the legality of the Defendant's pay practices.

**COUNT I.    CLAIM FOR OVERTIME PAY UNDER THE FLSA.**

39. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-38 of the Complaint.

40. Michels either knew or should have known that its employees were accessing their computers and/or punching in on Fleetfocus before their scheduled start times.

41. Michels had actual or constructive knowledge that its employees were working before their scheduled start times at a minimum both because it failed to investigate whether its employees were starting to work as soon as they punched in on Fleetfocus; and because it failed to either promulgate or enforce any policies that prohibited its employees from starting to work before their scheduled start times.

42. Beyer's work of logging onto and/or turning on her computer at the beginning of each day was integral and indispensable to her performance of principal activities for Michels.

43. It would not have been difficult for Michels to record when Beyer began to log onto and/or turning on her computer each day in that she was already signing a form at the beginning of each day, while her supervisor was already entering her work times into Michels' computer software each day.

44. Michels therefore knew from Beyer's Fleetfocus sign on times each day the latest possible time when she started to work each day, in that even if she took a break immediately after punching in on Fleetfocus the break must be counted as hours worked under the FLSA.

45. Michels therefore violated the FLSA by failing to count as hours worked the time period between when Beyer punched in on Fleetfocus and her scheduled start time.

46. Even though Michels knew through its supervisors that Beyer's meal breaks were frequently interrupted, it never either instructed Beyer to either take a long enough uninterrupted meal break to makeup for the interruption, or to communicate to Michels that her meal break had been interrupted, so that the meal break can be included in her worktime.

47. As a result, when Beyer's meal breaks were interrupted so that she did not have a sufficient period of time between 12:00 p.m. and 12;30 p.m. during which she could comfortably

eat a meal without interruption, she neither took a long enough meal break to make up for the interruption, nor was able to report to Michels that her break break had been interrupted.

48. Michels in fact deducted 30 minutes from Beyer's scheduled work time even when its supervisors witnessed that Beyer's meal breaks had been interrupted.

49. Had Beyer's work time between when she punched in on Fleetfocus and her scheduled work time and/or her interrupted meal breaks been counted as hours worked, she would have qualified for more overtime pay by receiving credit for more hours worked over 40 per week.

50. By paying an annual bonus to each eligible employee each year, Michels surrendered its discretion with respect to at a minimum the bonuses' fact of payment, so that the bonuses must be included when computing the employees' regular rate used to compute their overtime pay.

51. Because Michels had no reasonable grounds for believing that it need not compensate its employees for their reported work times or need not include a bonus paid every year to every eligible employee in computing their regular rate or need not pay its employees for their interrupted meal breaks, Beyer is entitled to liquidated damages on all additional overtime pay that she should have, but did not receive under the FLSA.

52. Because Michels was fully aware of its obligation to pay its employees full overtime pay for their hours worked over 40 per week, yet failed to investigate either whether its employees' scheduled work hours accurately reflected their work hours or whether bonuses paid each year to each eligible employee must be included in the regular rate, the members of the proposed collective action are eligible for the application of a three year statute of limitations.

53. Beyer is additionally entitled to her reasonable attorneys' fees incurred in prosecuting this first cause of action.

## COUNT II. CLAIM FOR UNPAID WAGES UNDER WISCONSIN LAW.

54. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-53 of the Complaint.

55. Michels had actual or constructive knowledge that Beyer started to work when she logged onto or turned on her computer and logged onto Fleetfocus, rather than at her scheduled start time, for the same reasons as it had such knowledge under the FLSA.

56. Michels had actual knowledge that Beyer's meal breaks were interrupted for the same reasons as it had such knowledge under the FLSA.

57. Under Wisconsin law, unlike the FLSA, Beyer was entitled to an uninterrupted meal break of 30 minutes in duration, rather than only a meal break of sufficient duration that would allow her to eat a meal comfortably.

58. On days when Beyer was told to wait for someone to come to the warehouse to pick up inventory between 12:00 p.m. and 12;30 p.m., Beyer's meal breaks were additionally compensable under Wisconsin law because she was not allowed to leave the warehouse where she worked during her meal breaks.

59. For these reasons, both the amount of time between when Beyer logged onto Fleetfocus and her scheduled start times, as well as the amount of time for Beyer's interrupted meal breaks must be counted as hours worked under Wisconsin law.

60. Because Wisconsin law requires the payment of full rather than minimum straight time wages, for all of her time that should have been but was not counted as hours worked Beyer was entitled to straight time pay at her established pay rates in addition to the overtime premium pay that she is entitled to pursuant to both the FLSA and Wisconsin law.

61. Because Wisconsin law adopts the FLSA's consent of the regular rate, Michels additionally violated Wisconsin law by failing to include annual bonuses that it paid to Beyer when computing her regular rate for overtime pay.

62. By failing to pay to the Plaintiff all straight time and overtime wages required by Wisconsin law within 31 days of when the work was performed, Defendants violated Wis. Stat. §109.03(1), so that Plaintiff may bring suit under Wis. Stat. 109.03(5) to recover all straight time and overtime wages owed to him, plus 50% of the unpaid wages as liquidated damages allowed by Wis. Stat. §109.11(2), plus his reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Wis. Stat. §109.03(6).

WHEREFORE, Beyer respectfully requests the Court to enter an order that:

a. Finds that Michels is liable to her for all overtime pay that she should have received once she received credit for her correct number of hours worked, and once her annual bonuses are included in computer her regular rate used to pay her overtime pay; plus 100% liquidated damages;

b. Finds that Michels is liable to her for straight tie pay for her additional hours worked that Michels should have but failed to count plus 50% liquidated damages;

c. Awards similar straight time and overtime relief to members of the proposed collective and class actions, including awarding relief to members of the proposed collective action pursuant to a three year statute of limitations;

d. Awards to her reasonable attorneys' fees and costs incurred in maintaining and prosecuting this action on an individual, collective, and class basis.

Dated this 21st day of April, 2021.

        /s/Yingtao Ho_____
Yingtao Ho
Email: yh@previant.com
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Telephone: 414-271-4500
Fax: 414-271-6308