UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMANDA BEYER,
on behalf of herself and all others similarly situated,

Plaintiff,

Case No. 21-cv-514-pp

v.

MICHELS CORPORATION,

Defendant.

## ORDER DENYING PLAINTIF'S MOTION FOR LEAVE TO FILE SUR-REPLY BRIEF (DKT. NO. 37), GRANTING DEFENDANT'S MOTION TO DISMISS BONUS CLAIM IN FIRST AMENDED COMPLAINT (DKT. NO. 31) AND DENYING DEFENDANT'S MOTION TO DISMISS PRE-SHIFT OVERTIME CLAIM OR STRIKE CLASS AND COLLECTIVE ALLEGATIONS (DKT. NO. 31)

The plaintiff filed a complaint under the Fair Labor Standards Act and Wisconsin wage law alleging that the defendant failed to (1) pay her for the extra time she worked before her scheduled report time; (2) include her annual bonus of $100 in the regular rate of pay; and (3) pay her for the times she worked through her meal break. Dkt. No. 1. Almost a year ago, the court granted in part the defendant's motion to dismiss for failure to state a claim and granted the defendant's motion to strike the plaintiff's class and collective allegations. Dkt. No. 24. Although the court expressed some frustration that the plaintiff had failed to amend in lieu of responding to the first motion to dismiss (even though the court had reminded the plaintiff that she had that option), the court allowed the plaintiff to file an amended complaint to try to

1

state a claim regarding her annual, year-end bonus and collective or class claims with respect to pre-shift overtime or bonuses. Id. at 16, 19.

The plaintiff filed an amended complaint; it contains the same individual and class and collective claims as the original complaint. Dkt. No. 27. She alleges, among other things, that the defendant failed to include annual bonuses in computing the regular rate for overtime pay and failed to use the computer software time stamps as start times to compute compensation. Id. at 1. She seeks to bring a claim on behalf of a collective defined as "all other hourly non-exempt [defendant's] employees in the United States who would either punch in on Fleetfocus or similar software at the beginning of each day; and all hourly non-exempt [defendant's] employees in Wisconsin who received an annual bonus each year." Id. at 7. She also seeks to represent a Rule 23 class of "[a]ll hourly non-exempt employees employed by [the defendant] in Wisconsin during the time period between April 21, 2019 and the date the Court grants class certification who either (a) punched in on Fleetfocus or other similar software at the beginning of their work days; or (b) received annual bonuses that were not included in computed their regular rate for overtime pay." Id. at 8.

The defendant has moved to dismiss the claims involving the bonus and the class and collective claims pled in support of the plaintiff's claim that she was not paid overtime for pre-shift work. Dkt. No. 32 at 7.

2

## I. Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendant's Motion to Dismiss (Dkt. No. 37)

Before turning to the second motion to dismiss, the court addresses the plaintiff's second motion to file a sur-reply brief. Dkt. No. 37. As she did when she filed her first motion for leave to file a sur-reply in the summer of 2021, the plaintiff argues that a sur-reply is necessary because the defendant raised a new argument in reply and misrepresented cases. The new argument, according to the plaintiff, is the suggestion that "ultimate facts are not presumed true at the motion to dismiss stage." Dkt. No. 37 at 1-2 (citing Dkt. No. 15 at ¶21). The plaintiff seeks leave to file a sur-reply brief to assert that this position is not supported by Seventh Circuit case law; she also asserts that paragraph 15 of the First Amended Complaint did not plead ultimate facts. Id. at 2. The plaintiff also wants to explain why the cited cases do not support the defendant's arguments and why the defendant's argument regarding the Wisconsin Department of Workforce Development's interpretation must fail. Id.

The defendant opposes the motion, arguing that the sur-reply is unnecessary. Dkt. No. 38. The defendant points to authority stating that sur-replies are generally disfavored by the court (citing Fitzgerald v. Achterberg, No. 19-cv-774, 2021 WL 808650, at *1 (W.D. Wisc. March 3, 2021)), and that leave to file them is "only rarely" granted (citing Groshek v. Time Warner Cable, Inc., No. 15-cv-157, 2016 WL 4203506, at *4 (E.D. Wis. Aug. 9, 2016, aff'd, 865 F.3d 884 (7th Cir. 2017)). Id. at 2. The defendant asserts that the court is capable of determining the effect of any misstatements of the law, and that a

sur-reply should be reserved for those situations where the moving party raises new factual legal issues in the reply brief. Id. at 2.

The court agrees that a sur-reply is unnecessary. In the court's order denying the plaintiff's July 2021 motion for leave to file a sur-reply, the court explained that neither the federal nor the local rules contemplate a sur-reply and that such a pleading is rarely necessary. Dkt. No. 24 at 3. Although the defendant did not oppose that earlier motion, the court found that the additional briefing was not necessary. Id. at 4. The same is true with the instant motion; this court is capable of reading the cited cases, discerning the holdings and determining whether the cases apply to the facts of this case. The court will deny the motion.

## II. Defendant's Motion to Dismiss the Amended Complaint (Dkt. No. 31)

In seeking dismissal of the amended complaint, the defendant argues that the "reboot is no better than the original" and that "in one respect, it is worse." Dkt. No. 32 at 7. The defendant asserts that the plaintiff's new allegations foreclose the "bonus" claim because they show that the annual $100 payment was either a gift or a discretionary bonus made to everyone at Christmastime regardless of performance. Id. With respect to the plaintiff's claim that she was not paid overtime for pre-shift work, the defendant argues that the plaintiff failed to address the deficiencies from her first complaint and simply added language from this court's order to her allegations. Id. at 7-8. Finally, the defendant argues that the plaintiff still has failed to adequately

4

allege that she is "similarly situated" to the members of the proposed collective. Id. at 8.

The plaintiff responds that the decision to pay year-end bonuses on an annual basis to each employee "created enforceable unilateral contracts that required [the defendant] to pay the annual bonuses under Wisconsin law." Dkt. No. 33 at 1. The plaintiff insists that the bonuses were neither a gift nor discretionary and therefore must be included in the regular rate for calculating overtime. Id. The plaintiff also argues that she adequately has alleged a uniform policy of instructing supervisors to record scheduled start times rather than actual start times. Id. at 2. She reminds the court that, at this early stage, she has no obligation to plead additional facts. Id. She asserts that the defendant's arguments regarding predominance are "premature" and can be considered at the certification stage. Id.

A.     Legal Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." Haywood v. Massage Envy Franchising, LLC, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted); see also Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6)

5

motion accepts the plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in the plaintiff's favor. Fortres Grand Corp. v. Warner Bros. Entm't Inc., 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations," but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." Bell v. City of Chi., 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

     B.     Amended Complaint

          1.     *Overtime*

The amended complaint is an individual and collective action under the Fair Labor Standards Act, as well as an individual and class action under Wis. Stat. §§103.02 and 109.03(1) and (5). Dkt. No. 27 at ¶1. The plaintiff alleges that the defendant failed to use the Fleetfocus software time stamps as the employees' start times to compute compensation and failed to include annual bonuses in computing their regular rate for overtime pay. Id. The plaintiff also alleges that the defendant violated the FLSA and Wisconsin law by failing to compensate the plaintiff for meal breaks that were interrupted because she helped others obtain parts in the warehouse in which she worked. Id.

At all relevant times, the plaintiff worked as an Inventory Specialist at the defendant's corporate headquarters in Brownsville, Wisconsin. Id. at ¶5. In that role, she obtained inventory for people who came into the warehouse. Id.

The plaintiff acknowledges that the defendant has locations throughout the United States. Id. at ¶6.

The plaintiff was scheduled to work at 6 a.m. but she says that no one ever told her that she couldn't start early. Id. at ¶8. She alleges that she regularly started work thirty to forty-five minutes before her scheduled start time to keep up with her work responsibilities. Id. She says that she regularly witnessed other employees starting work as soon as they arrived rather than waiting until their scheduled start times at the top of the hour or at fifteen-minute intervals past the hour. Id.

The plaintiff asserts at the beginning of each shift, she either had to turn on or log onto her computer and then access Fleetfocus software to sign in. Id. at ¶9. The plaintiff's sign-in on Fleetfocus generated a time stamp of her start time that the defendant could—and upon the plaintiff's information and belief did—access and review. Id. The plaintiff alleges that she had to use the Fleetfocus software on her computer throughout the day to perform her work, so the time spent accessing her computer and on the Fleetfocus software was integral and indispensable to her principal activities. Id. at ¶10. The plaintiff alleges, on information and belief, that all non-union employees must sign-in on Fleetfocus software at the beginning of each day. Id. at ¶11. The plaintiff asserts that she signed a form at the beginning of each day to verify that she was not suffering from any work-related injuries and that she was required to note the exact time when she signed the form; the plaintiff alleges that she frequently filled out the form before her scheduled start time. Id. at ¶12. The

7

plaintiff alleges, again "[u]pon information and belief," that the defendant allegedly required all of its other employees to sign the same form at the beginning of each workday. Id. The plaintiff alleges that there were no administrative operational requirements or any other reasons that prevented the defendant from requiring its employees to complete the injury verification forms immediately before signing onto their computers and to Fleetfocus Software. Id. at ¶13.

The plaintiff alleges that the defendant knew (as a result of reviewing the Fleetfocus time stamps) when employees signed into their computers but still maintained a "uniform policy of instructing supervisors to write down as its employees' start times their scheduled start times and/or instructing employees to make records stating they worked no more than a pre-determined number of hours per day; so that employees had no available mechanism to report to [the defendant] that they had started to work before and therefore should be paid before their scheduled start times." Id. at ¶¶14-15. The plaintiff says that the defendant never has made or enforced a policy stating that the employees could not sign onto their computers, log into Fleetfocus or perform work before their scheduled start times; she says that the defendant "merely sat back and accepted the benefits of the work performed by its employees before their scheduled start times without paying for it." Id. at ¶16. The plaintiff believes that, because of the defendant's "uniform policy"—which is not described or defined, but appears to be the alleged failure to pay employees for work allegedly performed before the employee's scheduled start time—

8

numerous employees were not paid for time spent performing work before their official scheduled start times. Id. at ¶17. The plaintiff says she regularly worked more than forty hours per week so that using her Fleetfocus punch-in times to compute her hours would have increased her number of hours over forty per week. Id. at ¶18.

The plaintiff alleges that the defendant knew or should have known that employees were logging in before their scheduled start time but that it never implemented a policy that prevented them from starting early. Id. at ¶¶51, 52. The plaintiff says that the defendant easily could have recorded when she "began to log onto and/or turning on her computer each day." Id. at ¶54. She asserts that the defendant either could have prohibited employees from starting work before their scheduled start times, or given them some mechanism to report starting work before their scheduled start times. Id. at ¶55.

2. *Bonus*

The plaintiff alleges that the defendant had an established policy of paying an annual bonus in an amount no less than $100 to each of its employees at the end of each year as additional compensation for their hours worked throughout the year, with employees receiving larger bonuses if they had worked more years for defendant. Id. at ¶19. To receive the annual bonuses, the employee allegedly had to meet two requirements: perform some work for the defendant during the year and remain employed by the defendant at the time the bonuses were paid out. Id. at ¶20. The plaintiff claims that the

9

policy was so established "that within a few months of [the plaintiff] starting work at [the defendant] in 2019, numerous employees had told her that she would be receiving a bonus at the end of the year." Id. at ¶21. She asserts that she received a bonus of $100 at the end of both 2019 and 2020. Id. According to the plaintiff, the defendant never communicated to the employees that it reserved its discretion to pay less than $100 at the end of the year to employees who met the two requirements the plaintiff describes. Id. at ¶22. Because her overtime pay was exactly one-and-a-half times her hourly rate, the plaintiff assumes that the annual bonuses she received in 2019 and 2020 were not included to increase her regular rate used to compute overtime pay. Id. at ¶24.

The plaintiff alleges that because the defendant had an established policy of paying the bonuses, the bonuses "promised" by the policy are wages under Wis. Stat. §109.01(3) and cannot be gifts under 29 U.S.C. §207(e)(1). Id. at ¶56. She alleges that because the bonuses were additional compensation that was guaranteed each year, the bonuses cannot be exempt under §207(e)(2) and (e)(3). Id. at ¶57.

### 3. *Collective Action Allegations*

The plaintiff brings the first claim "on her own behalf and on behalf of all other hourly non-exempt [defendant's] employees in the United States who would either punch in on Fleetfocus or similar software at the beginning of each day and all hourly non-exempt [defendant's] employees in Wisconsin who received an annual bonus each year." Id. at ¶34. She believes she is similarly

10

situated "to all other [defendant's] employees" because "all suffered underpayments of overtime pay as a result of [the defendant's] uniform policy of always compensate [sic] its employees starting at their scheduled start times without providing to its employees any mechanism to report that they had started to perform work before their scheduled start times, though it knew of, and failed to either promulgate or enforce any policies that prohibited its employees from starting to work before their scheduled start times." Id. at ¶35. She maintains that she is "also similarly situated to all other [defendant's] employees who worked for [the defendant] in Wisconsin in that they suffered an underpayment of overtime pay because their annual bonuses, whose payment was required pursuant to an established policy and therefore constitute wages within the meaning of Wis. Stat. §109.01(3) and therefore were wages under Wis. Stat. §109.01(3) rather than gifts, were never included by [the defendant] in computing the regular rate used to compute their overtime pay." Id. at ¶36.

4.    *Class Allegations*

Plaintiff seeks to represent the following class:

> All hourly non-exempt employees employed by [the defendant] in Wisconsin during the time period between April 21, 2019 and the date the Court grants class certification who either (a) punched in on Fleetfocus or other similar software at the beginning of their work days; or (b) received annual bonuses that were not included in computing their regular rate of pay.

Id. at ¶37. Among other things, the plaintiff alleges that the court "can uniformly determine whether an employer can avoid paying for an employee's pre-shift work when it provided to the employee no mechanism to report the pre-shift work; or alternatively whether [the defendant] both had knowledge of,

11

and failed to promulgate or enforce any policies to prohibit its employees from performing pre-shift work . . . ." Id. at ¶39. The plaintiff alleges the court can uniformly determine whether the annual bonuses must be included in computing the employee's regular rate of pay, id. at ¶41, and that the claims are typical because the defendant reviewed the time stamps and "acquired notice" that the plaintiff was working earlier than her scheduled start time but provided no mechanism for her to report that she started early, id. at ¶42. The plaintiff asserts that common questions of liability will predominate because the court easily can view records regarding the bonus, that the unpaid time can be determined "as a matter of just and fair inference" and that the court will be able to apply a uniform formula to the defendant's own time and payroll records. Id. at ¶¶44-46. The plaintiff suggests that in estimating their damages, the court also will be able to rely on class members' testimony to determine the percentage of time they would perform productive work after they logged into Fleetfocus. Id. at ¶48.

C.   Bonus Claim

1.   *Parties' Arguments*

The defendant argues that the plaintiff has pled the bonus claim out of court because the new allegations confirm that the payment was either excludable as a gift or a discretionary bonus. Dkt. No. 32 at 12. The plaintiff alleges that the defendant paid $100 annually at the end of the year to anyone who worked for the defendant during the year and remained working at the time of the bonus. Dkt. No. 27 at ¶20. The defendant cites 29 C.F.R.

12

§778.212(c), clarifying that a payment still is a gift even if it is paid regularly and employees come to expect it, and that even a Christmas bonus paid—not under a contract—but in the amount of "two week's salary and an equal additional amount for each 5 years of service with the firm" is an excludable gift. Dkt. No. 32 at 13. The defendant asserts that under 29 U.S.C. §207(e)(3), a bonus is discretionary if determined at the sole discretion of the employer at or near the end of a period and not under any prior contract, agreement or promise causing the employee to expect the payments regularly. Id. The defendant cites McPhee v. Lowe's Home Centers, LLC, 860 F. App'x 267, 270 (4th Cir. 2021), holding that a bonus was excludable as a gift or discretionary when not made under a contract or other agreement, not based on hours or wages and not so substantial as to have been relied upon. Id. at 13-14.

The plaintiff responds that a "payment required by law cannot be a gift." Dkt. No. 33 at 1. She maintains that the annual bonus created "enforceable unilateral contracts that required [the defendant] to pay the annual bonuses under Wisconsin law." Id. The plaintiff reasons that the defendant's decision to pay an annual bonus meant that the bonuses were no longer discretionary and therefore could not be excluded from the regular rate under 29 U.S.C. §207(e)(3). Id. As a result, the plaintiff argues that the bonuses must also be included in the Wisconsin law regular rate. Id. at 1-2.

The plaintiff points to Wis. Stat. §109.01(3), which defines "wage" or "wages" as "remuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay . . . bonuses and

13

any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy." Id. at 4. The plaintiff acknowledges that 29 C.F.R. §778.212(c) provides that a Christmas bonus may be a gift even though it is paid with regularity, but argues that the court should "harmonize §778.212(b) with §778.212(c) so that a bonus paid with regularity can no longer be characterized as a gift if the employee has a legal right to the bonus that can be enforced through a lawsuit." Id. at 6. The plaintiff believes it is sufficient that the bonuses were paid each year, that everyone knew of the policy and that the defendant never revoked its offer to pay the year-end bonuses. Id. at 5-6.

The plaintiff also argues that the bonus cannot be discretionary because by creating a policy, the defendant promised in advance to pay the bonus, id. at 7 (citing 29 C.F.R. §778.211(b)), and Wisconsin requires that year-end bonuses be included in regular rates, id. at 8-9. In support of this argument, the plaintiff cites the Wisconsin Department of Workforce Development interpretation of the regular rate to include non-discretionary bonuses. Id. at 9, n.1 (citing "Common Questions Concerning State Overtime Requirements" https://dwd.wisconsin.gov/er/laborstandards/overtimefaq.htm). The plaintiff argues that this interpretation isn't contrary to any Wisconsin statutes or regulations because no statute or regulation defines regular rate. Id. at 9. The plaintiff argues that this court "should predict that the Wisconsin Supreme Court would find persuasive the DWD's interpretation that 'regular rate' includes all remuneration for employment, including for example non-

14

discretionary bonuses." Id. Finally, the plaintiff argues that the FLSA cannot preempt Wisconsin's more generous definition of what should be included in the regular rate. Id. at 10.

In its reply brief, the defendant says that the plaintiff has failed to include "a single allegation in the amended complaint" that the plaintiff had a contractual right to a Christmas payment. Dkt. No. 36 at 6. The defendant urges the court to disregard the plaintiff's arguments about Wisconsin law because Wisconsin law does not define "regular rate" and the webpage on which the plaintiff relies is nonbinding. Id. at 10-11. The defendant argues that because the plaintiff has failed to state an individual bonus claim under state or federal law, her derivative class and collective claims must be dismissed as well. Id. at 13.

        2.   *Analysis*

Under the FLSA, the regular rate of pay need not include "sums paid as gifts; payments in the nature of gifts made at Christmas time or on other special occasions, as a reward for service, the amount of which are not measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. §207(e)(1). The corresponding regulation provides:

> If the bonus paid . . . on [a] special occasion is a gift or in the nature of a gift, it may be excluded from the regular rate under section 7(e)(1) even though it is paid with regularity so that the employees are led to expect it and even though the amounts paid to different employees or groups of employees vary . . . according to their length of service with the firm so long as the amounts are not measured by or directly dependent upon hours worked, production, or efficiency.

15

29 C.F.R. §778.212(c). The regulation explains that "a Christmas bonus paid (not pursuant to contract) in the amount of two weeks' salary to all employees and an equal additional amount for each 5 years of service with the firm, for example, would be excludable from the regular rate under this category." Id.

The plaintiff alleges that the defendant "maintained an established policy of paying an annual bonus in an amount no less than $100 to each of its employees at the end of each year as additional compensation for their hours worked throughout the year, with employees receiving larger bonuses if they had worked more years for [the defendant]." Dkt. No. 227 at ¶19. In the very next paragraph, however, she admits that the annual bonuses were paid to anyone who had worked for the defendant at some point during the year and remained an employee at the time the bonus was paid. Id. at ¶20. In other words, the bonus was paid regardless of "hours worked, production or efficiency." 29 U.S.C. §207(e)(1). This admission alone results in the plaintiff having pled herself out of court. The plaintiff doesn't allege that this "policy" was communicated to her by the defendant or that it appeared in any contract or agreement. Her bases for alleging the existence of a policy were that "numerous employees" told her that she would receive a bonus at the end of the year and that she did receive a bonus of $100 in 2019 and 2020. Id. at ¶21.

The court *twice* gave the plaintiff an opportunity to amend—after the defendant filed the first motion to dismiss and again after the court granted the first motion to dismiss. The plaintiff tries to make lemonade out of the lemon that there was no written agreement to pay the $100 by alleging that the

16

defendant never told employees that it was revoking the year-end payment or that it reserved its discretion to do so. Dkt. No. 27 at ¶22, 23. This argument is strained; it implies that an employer who chooses to give employees cash above their regular rates of pay is required to tell the employees that it reserves the right not to give them money it was not contractually obligated to give them in the first place. The amended complaint alleges nothing more than that other employees told the plaintiff she would get $100 at the end of the year (coincidentally around the holidays) and that she got the $100 two years in a row *simply because she worked for the defendant* when the $100 payments were handed out. On these facts, the court is hard pressed to find that a year-end payment of $100—even if it is paid each year—is anything other than a gift.

The plaintiff has constructed a novel theory that an employer's decision to give each employee no less than $100 at the end of the year—regardless of hours worked or production—creates a legally enforceable, contractual right to that money. Dkt. No. 33 at 1. But the plaintiff has not alleged that the defendant promised employees this payment—the plaintiff has alleged only that some other employees told her they expected it. And as both parties acknowledge, Wisconsin law doesn't define "regular rate of pay." The plaintiff is relying on a question-and-answer section of the DWD's webpage; that document is not legally binding, and its definition includes only "nondiscretionary bonuses" in the "regular rate" used to calculate overtime.

Based on the language of the federal statute, the clarifying regulation and the absence of any authority to support the plaintiff's claim, the court will grant the defendant's motion as to the bonus claim. Because the plaintiff has no claim based on the bonus policy, the court also finds that she cannot represent the class as to that claim.

D.   Overtime Pre-shift Work

1.   *Parties' Arguments*

The defendant next argues that the plaintiff has not plausibly alleged that the defendant maintained a uniform policy of not paying overtime for pre-shift work. Dkt. No. 32 at 17. According to the defendant, the plaintiff simply added to the amended complaint language from the court's prior order, otherwise offering nothing more than legal conclusions. Id. For example, the amended complaint alleges that the defendant "maintained a uniform policy of instructing supervisors to write down as its employees' start times their scheduled start times and/or instructing employees to make records stating they worked no more than a pre-determined number of hours per day." Dkt. No. 27 at ¶15. The defendant argues that the plaintiff did not allege how she learned of this alleged policy, or that she was required to work pre-shift, or how the policy was imposed, or whether anyone complained. Dkt. No. 32 at 24. The defendant maintains that the amended complaint alleges nothing about the defendant's timekeeping practices, how employees reported their time, or that any other employee was wronged under this purported "policy." Id. at 24-25. The defendant argues that the plaintiff simply asserts that she "regularly

18

witnessed other employees starting work as soon as they arrived, rather than waiting until their scheduled start times" and that "all non-union employees . . . must sign-in on Fleetfocus software at the beginning of each workday. Id. at 25 (citing Dkt. No. 27 at ¶¶8, 11). This, according to the defendant, has nothing to do with whether the defendant instructed the supervisors to report only scheduled start times. Id. In fact, the defendant says that the allegation that all employees signed in with Fleetfocus—a time-stamping software—at the beginning of each day suggests that defendant had a policy "requir[ing] its employees to report their *actual start times* using this software." Id. (Emphasis in original.)

Aside from the failure to allege a common policy, the defendant argues that individualized questions predominate because the plaintiff seeks to represent "every single hourly, non-exempt [defendant's] employee, regardless of work location, supervisor, job duties or union status." Id. at 26. The defendant asserts that its employees span numerous job sites across the nation and have numerous different supervisors, raising questions as to whether they were subject to various timekeeping practices. Id. The defendant adds that some of the employees were non-unionized, some were unionized with collective bargaining agreements and all performed countless different functions. Id. at 27. The defendant argues that it is possible that the employees in the plaintiff's proposed class and collective may not even have needed to use Fleetfocus as part of their jobs; the defendant says the plaintiff has not addressed the particular job duties of the putative class members and has

19

provided nothing to suggest that logging in to Fleetfocus was an integral part of *their* duties. Id. at 27-28.

The plaintiff responds that the defendant is wrong to label her allegations as legal conclusions. Dkt. No. 33 at 12. She maintains that she adequately has pled that the defendant told its supervisors to record the scheduled start times, that the defendant told its employees to record only their scheduled hours each day and that the defendant provided no mechanism for employees to report their actual start times. Id. (citing dkt. no. 27 at ¶15). The plaintiff also argues that the defendant is wrong for arguing that she was required to plead additional facts. Id. at 12-13. The plaintiff believes that at the pleading stage, it is sufficient to allege that the defendant maintains an uniform policy of paying employees based on their scheduled start times rather than actual start times. Id. at 16-17. She says it is enough that she alleges that the defendant did not provide a mechanism for reporting actual start times and that the defendant knew from employees' Fleetfocus punches that they began work before their scheduled start times but did not require employees to wait until their scheduled start times to start working. Id. at 17. The plaintiff insists that the defendant's arguments about whether the collective members are similarly situated are premature. Id. She asserts that those are questions for after discovery, on a motion for decertification. Id. (citing Brabazon v. Aurora Health Care Inc., No. 10-CV-714, 2011 WL 1131097, *2 (E.D. Wis. 2011)). The plaintiff asserts that a complaint need not define a Rule 23 class. Id.

The plaintiff argues that the defendant has the Rule 23 commonality requirement wrong—that the plaintiff needs only to show that there are common questions that will drive the resolution of the litigation. Id. at 18. The plaintiff points to Wisconsin law that requires an employer to keep track of when an employee begins work each day. Id. at 19 (citing DWD §272.11(1)(d)). The plaintiff says that at a minimum, the court can "uniformly determine both whether its employees' Fleetfocus time stamps should have at least let [sic] [the defendant] to suspect that its employees were beginning to work before their scheduled start times; and if so whether [the defendant] promulgated and adequately enforced any policies that required its employees to wait until their scheduled start times to begin work. Id. The plaintiff points out that the "Rule 23 class is limited to those who worked for [the defendant] in Wisconsin (given that the class advances claims under Wisconsin law), who punched in on Fleetfocus or similar software at the beginning of each workday." Id. at 20 (citing dkt. no. 27 at ¶37). The plaintiff notes that the defendant has offered no explanation as to why an employee's membership in a bargaining unit would have any impact on the class claim. Id. at 21. Finally, the plaintiff says that without discovery, it's impossible to know whether employee classification affects the proposed claims. Id. She asserts that discovery "may show [the defendant] prevented or discouraged all employees "from reporting their work performed before their scheduled start times." Id. at 22. The plaintiff also maintains that discovery would allow her to determine whether any employees

21

who punched in on Fleetfocus at the beginning of the day did not need to use the software during their workday. Id.

In its reply brief, the defendant doubles down on its position that it is not enough to allege only that a uniform policy exists. Dkt. No. 36 at 6. The defendant says that the plaintiff's allegations should include information such as who advised employees about the policy, how it was imposed, whether any employee complained and what the response was. Id. at 14 (citing Mell v. GNC Corporation, No. 10-945, 2010 WL 4668966, at *7 (W.D. Pa. Nov. 9, 2010)). The defendant argues that the plaintiff has not alleged a single fact that would support an inference that a firm-wide policy exists. Id. The defendant labels the plaintiff's allegation that the defendant maintained a "uniform policy of instructing supervisors to write down as its employees' start times their scheduled start times and/or instructing employees to make records stating they worked no more than a pre-determined number of hours per day" as an ultimate fact. Id. at 15. In other words, the defendant argues that the plaintiff is pleading the ultimate conclusion that the jury—or the court—needs to decide. Id. at 16 (citing McCauley v. City of Chi., 671 F.3d 611, 618 (7th Cir. 2011)).

The defendant argues that the plaintiff's position is nonsensical: on the one hand she alleges that the defendant required all employees to punch in using Fleetfocus and on the other hand she alleges that the defendant had its employees and supervisors separately record only a set number of hours per day. Id. at 18. The defendant again focuses on the plaintiff's consistent

definition of the class as including "all" the defendant's employees in the United States who punched in on Fleetfocus or other software at the beginning of the day, arguing that the plaintiff is trying to "sweep in employees from across the nation, spanning numerous job sites, with varying managers and myriad job duties." Id. at 18-19. Finally, in response to the plaintiff's argument that it is too soon to consider whether the plaintiff is similarly situated to the class members or whether common questions predominate, the defendant insists that the plaintiff still must plausibly allege that the proposed class satisfies the requirements of Rule 23 and the FLSA. Id. at 19-20. According to the defendant, courts can dismiss class or collective allegations at the pleading stage. Id. at 20 (citing Ladik v. Wal-Mart Stores, 291 F.R.D. 263, 272-73 (W.D. Wis. May 24, 2013)) (dismissing class certification at the pleading stage because the plaintiff failed to allege "more than a sheer possibility" that they could distinguished their proposed class from that rejected in Dukes)).

      2. *Analysis*

Last year, the Seventh Circuit reminded district courts that "all a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief." Luna Vanegas v. Signet Builders, Inc., 46 F.4th 636, 645 (7th Cir. 2022). The appellate court explained that, in the FLSA context, "a plaintiff will typically meet this bar by alleging that she was owed wages and that those wages were never paid." Id. This court applied that standard when ruling on the first motion to dismiss. Dkt. No. 24 at 6. The court cited a decision by Judge Conley from the Western District of Wisconsin,

who found the allegations to be sufficient where the plaintiffs alleged they worked more than forty hours a week and were not paid because of the defendants' policies. Id. at 10 (citing Bitner v. Wyndhams Vacation Resorts, Inc., No. 13-cv-451-wmc, 2013 WL 5878724, *4 (W.D. Nov. 1, 2013)).

When ruling on the plaintiff's first motion to dismiss, the court allowed the plaintiff to proceed on her individual pre-shift overtime claim even though the allegations were "thin." Dkt. No. 24 at 13. The court concluded, however that the plaintiff had not adequately pled collective or class claims with respect to the pre-shift overtime claims because she had not alleged a uniform policy (independent of a what single supervisor said) that applied to logging in and failed to allege that other employees weren't properly compensated. Id. at 19.

In the amended complaint, the plaintiff alleges the existence of a uniform policy that applies to all employees in Wisconsin who log in with the Fleetfocus software, and she alleges that those employees weren't properly compensated. According to the plaintiff, she regularly witnessed other employees starting to work as soon as they arrived regardless of their scheduled start time. Dkt. No. 27 at ¶8. She says that "[u]pon information and belief, all non-union employees of [the defendant] must sign-in on Fleetfocus software at the beginning of each workday." Id. at ¶11. The plaintiff alleges that the defendant had actual knowledge that employees were logging in, "which was integral and indispensable to their performance of other work for [the defendant] throughout their workdays, before their scheduled start times." Id. at ¶14. Most important, the plaintiff alleges that the defendant "maintained a uniform

24

policy of instructing supervisors to write down as its employees' start times their scheduled start times and/or instructing employees to make records stating they worked no more than a pre-determined number of hours per day; so that employees had no available mechanism to report to [the defendant] that they had started to work before and therefore should be paid before their scheduled start times." Id. at ¶15. The plaintiff asserts that the defendant had no policy stating that the employees couldn't sign in early or perform work before their scheduled start times and that as a result, "numerous employees were not paid for time spent performing work before their official scheduled start time." Id. at ¶¶16, 17.

The defendant argues that these allegations are bare legal conclusions that do not state a plausible claim for relief. In support of its position, the defendant cites a case in which this court dismissed an official capacity claim because the plaintiff did not indicate or imply the existence of an official policy or custom. Dkt. No. 36 at 6 (citing Jackson v. Slome, No. 15-cv-771, 2016 WL 109962, at *4 (E.D. Wis. Jan. 7, 2016)). The issue in Jackson was that the plaintiff had alleged nothing more than that an individual defendant acted on his or her own to deprive the plaintiff of his constitutional rights. Id. The defendant cites another §1983 case decided by the Seventh Circuit, McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011), in which the plaintiff alleged that the City "ha[d] an unwritten custom, practice and policy to afford lesser protection or none at all to victims of domestic violence." Id. at 14. The Seventh Circuit found those bare allegations insufficient, commenting that legal

elements are not factual allegations. McCauley, 671 F.3d at 618. The court determined that a facially plausible Monell[1] claim requires allegations that allow a "reasonable inference that the City established a policy or practice of intentionally discriminating against female victims of domestic violence in the provision of police protection." Id. At best, the plaintiff in McCauley had alleged an "uneven allocation of limited police-protection services" but did not plausibly suggest that "the City maintained an intentional policy or practice of *omitting* police protection from female domestic-violence victims as a class." Id. at 619.

Both Jackson and McCauley offer guidance as to how to plead a Monell municipal liability claim in a §1983 case, but neither involved the type of FLSA allegations at issue here. The defendant cites Mell v. GNC Corp., No. 10-945, 2010 WL 4668966, at *7 (W.D. Pa. Nov. 9, 2010), an FLSA case from the Western District of Pennsylvania, which held a plaintiff who pled a wage claim to a greater level of specificity. Dkt. No. 36 at 7. The Mell court's issue with the pleading was the lack of specificity regarding any policy or practice of making employees work off the clock:

> Based on our analysis of similar cases reiterating the threshold requirement that the complaint must possess "enough heft" to establish the plaintiff's right to relief (*see* [*Bell Atlantic v.*] *Twombly*, 550 U.S. [554,] at 557 [2007]), we conclude that the facts alleged by Plaintiffs Mell and Munoz fail to establish that right. In fact, we cannot even infer from the Amended Complaint that there was a "mere possibility of misconduct" unless we accept as a "fact" that

---

[1] Monell v. Dep't of Social Servs. of New York City, 436 U.S. 658 (1978), holding that a municipality may be held liable for civil rights violations under 42 U.S.C. §1983 if the violations of the plaintiff's civil rights were the result of a policy, practice or procedure of the municipality.

> Defendants had a policy or practice of requiring their employees to work "off the clock." Plaintiffs have failed to provide *any* factual allegations to support this claim. For example, they provide no information about who advised them of this policy, when they were told they were required to work "off the clock" or what the work consisted of, how the policy was imposed, approximately how many hours each week they worked without being paid, and whether either Plaintiff or any other GNC employee complained to a supervisor about the practice and, if so, what GNC's response was. Plaintiffs provide no facts about the timekeeping practices of GNC, for instance, was there literally a time clock that employees used to record their time or was it simply understood that regular working hours would be from, say, 10 a.m. to 6 p.m.?

Mell, 2010 WL 4668966, at *7. It also concerned the Mell court that the plaintiffs had admitted that they couldn't state with specificity the number of uncompensated hours worked but failed to "offer an approximation of such hours or a vague description of the 'uniform compensation system for calculating overtime." Id., at *8. For example, the plaintiffs didn't suggest that they had kept a personal diary of the hours they had worked without compensation. Id.

In this case, the plaintiff alleges that the defendant had a uniform policy of requiring supervisors to use the scheduled time rather than the time the employee logged in on Fleetfocus. This is more specific than the allegations in Mell. A year after the Western District of Pennsylvania decided Mell, the Northern District of Illinois rejected Mell's more restrictive approach. In Nehmelman v. Penn Nat. Gaming, Inc., 790 F. Supp. 2d 787, 797 (N.D. Ill. 2011), the court chose to "follow the federal notice pleading requirements" and "the standards set forth by the Seventh Circuit." The court noted that "FLSA claims are generally simple and do not 'require a fuller set of factual allegations

27

to render them plausible.'" Id. (citing Nicholson v. UTi Worldwide, Inc., No. 3:09-CV-722-JPG-DGW, 2010 WL 551551, *4 (S.D. Ill. Feb. 20, 2010) and Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)). The court finds no authority in this circuit treating a FLSA claim differently than any other claim, provided the plaintiff alleges sufficient facts to at least make the claim plausible and avoids relying solely on legal conclusions.

The defendant's remaining arguments focus on the Rule 23 class allegations. The motion to dismiss standard is different from the standard applied on a Rule 23 motion to certify the class. Compare Fed. R. Civ. P. 23(a) and (b) with Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion considers whether the claim is plausible on its face; a Rule 23 motion focuses on the four elements of Rule 23(a) plus one of the three permissible types of classes under Rule 23(b). See Simpson v. Dart, 23 F.4th 706, 711 (7th Cir. 2022). The defendant has asked the court to strike the class allegations as an alternative to dismissal. District courts within the Seventh Circuit have held that motions to strike class allegations are generally disfavored and fall under the purview of Rule 23 rather than Rule 12(f). See Harris v. Rust-Oleum Corp., No. 21-cv-01376, 2022 WL 952743, *3, 4 (N.D. Ill. Mar. 30, 2022) (collecting cases). Only where it is apparent from the complaint that the class allegations are "facially and inherently deficient" is a motion to strike is appropriate. Id. When the plaintiff has had no opportunity for discovery, the defendant bears the burden of showing the class is not certifiable. Womick v. Kroger Co., No. 21-CV-00574-NJR, 2022 WL 1266630, *2 (S.D. Ill. Apr. 28, 2022).

28

The court understands that the defendant has concerns regarding the existence of a policy, the scope of the class and the viability of any claims, but its motion is premature. The plaintiff has pled a uniform policy, a decision to ignore actual start times in favor of scheduled start times, a general requirement that employees log in with Fleetfocus (even though those actual times are not used to compute pay) and a failure to pay employees for actual time worked. The court understands the defendant's concerns: even though the plaintiff has proposed a Wisconsin class—not a nationwide class (see Dkt. No. 27 at ¶37)—it's not clear how many employees, how many positions, how many supervisors or how much overtime is implicated. The defendant will have an opportunity to raise these concerns following some discovery; the Federal Rules of Civil Procedure (including Rules 11, 23 and 56) remain available to the defendant to address them. At this time, the plaintiff has plausibly and sufficiently alleged a uniform policy that resulted in undercompensating the defendant's Wisconsin employees.

## III. Conclusion

The court **DENIES** the plaintiff's motion for leave to file a sur-reply brief in opposition to the motion to dismiss. Dkt. No. 37.

The court **GRANTS** the defendant's motion to dismiss the first amended complaint as to the bonus claim. Dkt. No. 31.

The court **DENIES** the defendant's motion to dismiss the first amended complaint as to the pre-shift overtime claim or to strike the class allegations. Dkt. No. 31.

The court **ORDERS** that by the end of the day on **April 14, 2023**, the plaintiff must file a second amended complaint that excludes the bonus claims. The defendant must file its answer to the amended complaint by the end of the day on **May 5, 2023**. Once the defendant has filed its answer, the court will order the parties to confer and file their Rule 26(f) report.

Dated in Milwaukee, Wisconsin this 29th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**