UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMANDA BEYER,

                    Plaintiff,

                                                    Case No. 21-cv-514-pp
          v.

MICHELS CORPORATION,

                    Defendant.

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (DKT. NO. 108) AND DENYING AS MOOT MOTION FOR CLASS CERTIFICATION (DKT. NO. 73)**

On May 31, 2024, the plaintiff filed a third amended complaint in this wage and hour class action under the Fair Labor Standards Act (FLSA) and Wisconsin law. Dkt. No. 104. The defendant since has moved to dismiss the third amended complaint for failure to state a claim. Dkt. No. 108. There is also a pending motion for class certification that the plaintiff filed prior to filing the third amended complaint. Dkt. No. 73. The court will grant in part the defendant's motion to dismiss and deny the plaintiff's motion for class certification.

I.    **Background**

      A.    <u>Procedural Background</u>

The plaintiff filed this case in April 2021, alleging that the defendant failed to compensate employees for time worked before their scheduled shift, failed to count as hours worked the time during which their lunch breaks were

1

interrupted and failed to include annual bonuses in computing their regular rate for overtime pay. Dkt. No. 1. The defendant filed a motion to dismiss the complaint for failure to state a claim, dkt. no. 15, which the court granted in part, dkt. no. 24. The court allowed the plaintiff to file an amended complaint regarding her annual, year-end bonus and collective or class claims with respect to pre-shift overtime or bonuses. Dkt. No. 24 at 19.

On April 14, 2022, the plaintiff filed an amended complaint. Dkt. No. 27. The defendant moved to dismiss the claims involving the bonus and the class and collective claims pled in support of the plaintiff's claim that she was not paid overtime for pre-shift work. Dkt. No. 32 at 7. The court granted that motion in part and ordered the plaintiff to file a second amended complaint excluding the bonus claims. Dkt. No. 39 at 29–30. The plaintiff did so, dkt. no. 40, and the defendant answered, dkt. no. 43.

On October 6, 2023, the plaintiff sought leave to file a third amended complaint to revise her allegations regarding the defendant's rounding policy based on information revealed in discovery. Dkt. No. 53. The defendant opposed the motion. Dkt. No. 63. Meanwhile, the plaintiff filed a motion for class certification. Dkt. No. 73.

During a May 17, 2024 status conference, the court opined that the proposed third amended complaint was so unclear that it was "difficult, if not in some places impossible, to figure out which claims apply where and to whom and even how many [claims] there are." Dkt. No. 103 at 15. The court granted the plaintiff leave to file a corrected version of the proposed third amended

complaint to make it clearer. Id. at 19. The court warned the plaintiff that the case needed to move forward, and this was the plaintiff's "last shot" to craft an intelligible complaint. Id. The court deferred ruling on the pending motion for class certification until the issues with the third amended complaint were resolved. Id. at 20.

B.    Third Amended Complaint

The plaintiff filed a corrected third amended complaint on May 31, 2024. Dkt. No. 104. The third amended complaint alleges that the named plaintiff worked for the defendant from September 2019 to April 2021 as an inventory specialist. Id. at ¶5. The plaintiff alleges that she "regularly" began working fifteen to forty-five minutes prior to her scheduled start time of 6 a.m. Id. at ¶8. She says that when she began her workday, she would "punch in" virtually using the defendant's Fleetfocus software. Id. at ¶10. She alleges that supervisors could access, review and sometimes modify punch-in times via Fleetfocus. Id. She maintains that this procedure was typical for other employees who used a defendant-provided computer to perform their work. Id. at ¶11.

The plaintiff alleges that if a supervisor adjusted an employee's punch-in time, the defendant's payroll software would perform rounding to calculate the employee's hours worked based on the adjusted punch-in time rather than the employee's original punch-in time. Id. at ¶13. She contends that this practice resulted in employees receiving credit for fewer hours worked per week than

3

they actually worked, depriving them of overtime pay. Id. at ¶14. The plaintiff

provides the following example:

> For example, on May 15, 2020 [the plaintiff] punched in on
> Fleetfocus at 5:40:30 a.m., and reported that she started to handle
> inventory at 5:40:30 a.m., but her supervisor adjusted her punch in
> time to 5:49 a.m. [The plaintiff] was paid starting at 6:00 a.m.
> because [the defendant] rounded her supervisor adjusted punch-in
> time of 5:49 a.m. to 6:00 a.m., whereas the next quarter hour to [the
> plaintiff's] actual punch-in time of 5:40 a.m. would have been 5:45
> a.m. Because [the plaintiff] worked more than 40 hours during the
> week including May 15, 2020, she would have received an additional
> quarter hour of overtime pay fo [sic] the week, had [the defendant]
> rounded to the next quarter hour her Fleetfocus punch-in time
> rather than her supervisor adjusted punch-in time on May 15, 2020.

Id. at ¶15. Confusingly, the plaintiff alleges that through November 2021, the

defendant "uniformly rounded" employees' adjusted punch-in times to the next

quarter hour "even when the next quarter hour was not the nearest quarter

hour to the supervisor approved/adjusted Fleetfocus punch-in times," but also

that the defendant "sometimes" rounded the punch-in time to the previous

quarter hour. Id. at ¶17. The plaintiff alleges that after November 2021, the

defendant "occasionally rounded" employees' punch-in times to minimize the

number of hours worked rather than to the nearest quarter hour. Id. at ¶18.

The plaintiff alleges that as a result, she and other employees lost overtime pay

because the defendant failed to round their punch-in times to the nearest

quarter hour. Id. at ¶19.

The plaintiff alleges that the defendant improperly adjusted and rounded

employees' punch-in times when returning from meal periods. Id. at ¶23. She

asserts that she and other employees regularly punched in less than thirty

minutes after they punched out for their meal periods. Id. at ¶¶21–22. She

4

alleges that the defendant calculated the number of hours employees worked per day by first "determining the number of hours between their rounded supervisor approved/adjusted Fleetfocus punch-in and punch-out times, and then subtracting from that total the actual duration of the meal period, which would be computed using the employees' supervisor approved/adjusted but un-rounded Fleetfocus meal punch-out and punch-in times." Id. at ¶23. But the plaintiff also asserts (in what appears a contradiction) that the defendant rounded up employees' meal period punches, deducting 0.5 hours from an employee's hours worked even if she took a shorter meal period. Id. at ¶¶24–25. Then she alleges that the defendant rounded the computed number of hours down to the nearest quarter hour, which always resulted in employees being paid for fewer hours than they worked. Id. at ¶¶24, 26.

The plaintiff asserts that she always was scheduled to take her meal break from 12:00 to 12:30 p.m. each day, but that her breaks were often interrupted by others coming to the warehouse to obtain inventory. Id. at ¶¶27–28. She alleges that her supervisors were aware of this issue but never told her that she should work past 12:30 or take her meal period at a different time so that she could receive an uninterrupted meal break. Id. at ¶¶29, 32. The plaintiff alleges that in June or July 2020, she stopped punching in and out for her meal periods because the defendant deducted thirty minutes from her hours worked no matter what her actual meal punches said. Id. at ¶35.

Count I of the third amended complaint ("Failure to Properly Compensate Employees Whose Jobs Required Them to Use Their Michels Assigned

5

Computers on a Daily Basis") alleges that the defendant's practice of rounding "supervisor edited" punch-in times resulted in employees being paid for fewer hours than they worked and depriving them of possible overtime pay under the FLSA and Wisconsin law. Id. at ¶¶54–55, 58–59. Count II ("Unlawful Rounding of Supervisor Approved/Adjusted Punch-in and Punch-out Times") alleges that the defendant violated the FLSA and Wisconsin law by rounding its employees "supervisor approved/adjusted punch-in and punch-out times" in a manner that minimized the number of hours an employee worked instead of to the nearest quarter hour. Id. at ¶66–67. The plaintiff attempts to explain the difference between Count I and Count II as follows:

> For example, if Plaintiff punched in on Fleetfocus at 5:30 a.m., her supervisor adjusted her punch-in time to 5:49 a.m., and she started to be paid at 6:00 a.m, Count II of the Complaint only provides a remedy for [the defendant's] improper rounding of the supervisor adjusted punch in time of 5:49 a.m. to 6:00 a.m. rather than to the nearest quarter hour of 5:45 a.m. Plaintiff must look to Count I of this Complaint to receive credit for her work time from 5:30 a.m. to 5:45 a.m., which she lost because [the defendant] rounded her supervisor adjusted punch-in time rather than her actual punch-in time.

Id. at ¶69.

Count III ("Unlawful Payroll Deduction of Meal Time Worked") alleges that the defendant violated the FLSA and Wisconsin law by rounding meal period punches and deducting employees' hours worked for meal periods shorter than thirty minutes. Id. at ¶¶77, 80. Count IV ("Individual Claim for Meal Periods that were Interrupted by Work") alleges that the plaintiff is entitled to recover under the FLSA and Wisconsin law for her meal periods that were interrupted by work. Id. at ¶¶88, 90.

6

The defendant now moves to dismiss the third amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the basis of the plaintiff's claims is unclear, that she fails to allege standing for any claim based on punch-out times and that the complaint is unintelligible due to myriad typographical and syntax errors. Dkt. No. 109 at 6.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert the defense of lack of subject-matter jurisdiction by motion. A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. <u>Bultasa Buddhist Temple of Chi. v. Nielsen</u>, 878 F.3d 570, 573 (7th Cir. 2017). In evaluating a challenge to subject-matter jurisdiction, the court first must determine whether the movant has raised a factual or a facial challenge. <u>Silha v. ACT, Inc.</u>, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge contends that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. <u>Id.</u> (internal quotation and citation omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject-matter jurisdiction exists. <u>Id.</u> In contrast, a facial challenge argues that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." <u>Id.</u> (internal quotation and citation omitted). In reviewing a facial challenge, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." <u>Id.</u>

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006) (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). And because subject-matter jurisdiction involves a federal court's power to decide a case, "it 'can never be forfeited or waived.'" Id. (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). See also Ware v. Best Buy Stores, L.P., 6 F.4th 726, 731 (7th Cir. 2021) ("'Subject-matter jurisdiction is the first issue in any case[,]' Miller v. Southwest Airlines Co., 926 F.3d 898, 902 (7th Cir. 2019)" and "'we have an independent obligation to determine that jurisdictional requirements are satisfied[,]' Knopick v. Jayco, Inc., 895 F.3d 525, 528 (7th Cir. 2018).").

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court takes

8

"all the factual allegations in the complaint as true," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), and draws all reasonable inferences in the plaintiff's favor, <u>Roberts v. City of Chicago</u>, 817 F.3d 561, 564 (7th Cir. 2016).

## III.  Motion to Dismiss

### A.  Parties' Arguments

The defendant argues that Counts I and II of the complaint are impermissibly "vague and confusing." Dkt. No. 109 at 17. It contends that the plaintiff repeatedly uses the phrase "supervisor approved/adjusted time" without explaining what the term means. <u>Id.</u> Based on context clues, the defendant intuits that this term means punch times adjusted by a supervisor. <u>Id.</u> at 18. The defendant says it is unclear whether the plaintiff is bringing rounding claims based only on supervisor adjusted punch times or on all punch times. <u>Id.</u> It argues that Count II is titled "Unlawful Rounding of Supervisor Approved/Adjusted Punch-in and Punch-out Times," but that the plaintiff never alleges that supervisors adjusted punch-*out* times, only punch-*in* times. <u>Id.</u> at 18–19. The defendant argues that the complaint confuses the issue by differently treating employees with computers and without computers, alleging that supervisor adjusted punch times are accurate for non-computer users but are inaccurate for computer users. <u>Id.</u> at 19. The defendant argues that because it is unclear what it is being accused of, the defendant cannot adequately defend against the plaintiff's claims. <u>Id.</u> at 19–20.

The defendant argues that it is unclear whether the plaintiff is alleging that all rounding violates Wisconsin law. <u>Id.</u> at 21. It recounts that the third

amended complaint states that "even if Wisconsin law follows the FLSA" on rounding, the defendant's rounding practices violated Wisconsin law. Id. The defendant asserts that the "even if" clause suggests that the plaintiff is claiming that all rounding is illegal, but she does not explicitly state that theory in the complaint. Id. It argues that the "all rounding is illegal" theory contradicts the plaintiff's own allegations that the defendant should have rounded employee time neutrally. Id. at 21–22.

The defendant next argues that Count III does not clearly allege whether there is a difference between federal and Wisconsin law regarding the compensability of breaks. Id. at 23. The defendant argues that the third amended complaint brings claims for the collective based on two groups of lunch claims—one for lunches of "fewer than 20 minutes" and one for lunches of "20-29 minutes,"—while bringing class claims for all lunch periods of "1-29 minutes." Id. The defendant argues that the plaintiff goes on to say that Wisconsin law and the FLSA are coextensive on the compensability of break time. Id. at 24. The defendant alleges that this makes it impossible to know what theory it must defend against. Id.

The defendant also argues that the complaint is unintelligible due to errors and confusing language throughout. Id. It argues that the allegations are too long and written in a convoluted way that requires effort to decipher. Id. at 24–25. It asserts that the complaint fails to identify the Wisconsin statutes that the plaintiff claims the defendant violated and does not identify whether the

10

class claims are limited to state law claims or also include federal law claims. Id. at 25.

Returning to the issue of punch-out times, the defendant argues that the plaintiff has not alleged that she has standing to raise any claims about punch-out times. Id. at 26. The defendant argues that the third amended complaint does not allege that the named plaintiff herself ever had her punch-out times adjusted by a supervisor. Id. at 27–28. It contends that if the plaintiff never experienced this practice, she lacks standing to bring these claims on behalf of the class. Id. at 28.

The plaintiff responds that the threshold for dismissing a complaint as unintelligible is high, and that the third amended complaint does not reach that threshold. Dkt. No. 110 at 3. She argues that the complaint provides "clear notice" that she is alleging the defendant violated the FLSA and Wisconsin law based on its rounding practices. Id. at 4–5. She asserts that a complaint is not required to plead any legal theories or cite to statutory subsections to state a claim for relief. Id. at 5. The plaintiff says that Counts I and II are clear and distinct claims. Id. at 6. She says that "Count I argues [the defendant] rounded the wrong punch-in times, whereas Count II argues the manner that [the defendant] rounded both punch-in and punch-out times was wrong." Id. She argues that the former applies only to employees who used a computer in the course of their work while the latter applies to all employees. Id. at 6–7. She argues that this distinction supports the seemingly contradictory statements that supervisor approved/adjusted punch-in times

11

may be relied upon in one case and not the other. Id. at 7. The plaintiff contends that the term "supervisor approved/adjusted punch times" necessarily includes punch-out times that supervisors approved or adjusted. Id. at 8. She maintains that even though the complaint doesn't allege that supervisors changed punch-out times, that does not prevent the plaintiff from challenging how those unchanged punch-out times were *rounded*. Id.

Turning to her state law claims, the plaintiff argues that she is not required to commit to a single legal theory at the pleading stage. Id. at 11. She argues that the same facts are needed to advance the theory that the defendant improperly rounded punch times and that the defendant was not allowed to round punch times at all under Wisconsin law. Id. at 11–12. She says the defendant is entitled only to fair notice of the claim, not the legal theories on which it rests. Id. at 12.

The plaintiff says that her meal period claim seeks different relief under the FLSA and Wisconsin law because state and federal law provide different remedies depending on the type of violation. Id. at 13. She argues that the FLSA prohibits any pay deduction for meal periods shorter than twenty minutes, while Wisconsin law does not. Id. at 13–14. She maintains that her FLSA claim necessarily must be divided into two subclaims while her Wisconsin claim need not be. Id. at 14–15.

The plaintiff insists that there is "nothing improper" or unclear about the way the complaint is drafted. Id. at 15. She argues that further elaboration on her allegations would have triggered an objection that the complaint was too

12

lengthy. Id. at 16. She says that she "has no obligation to cite to any statutes in a pleading" and that her assertion that claims are brought "under Wisconsin law" is sufficient. Id. (citing Johnson v. City of Shelby, MS., 574 U.S. 10, 10–11 (2014)). The plaintiff admits that the complaint is riddled with typographical errors, but explains that this is "because Plaintiff [sic] counsel had unknowingly turned off the computer program feature that underlined misspelled words when he was preparing the Third Amended Complaint;" he argues that the intended meaning still is "clear." Id. at 17. The plaintiff attached a revised third amended complaint that fixes the typographical errors. Dkt. No. 110-1. (This would be the *third* "third amended complaint" the plaintiff has filed (and the fifth complaint in the case)).

The plaintiff next argues that the court should not dismiss the third amended complaint on the merits. Dkt. No. 110 at 18. She argues that the third amended complaint distinguishes between employees who used a computer for work and those who did not because it is relevant to determining the proper punch-in time. Id. According to the plaintiff, any discussion of whether time employees spent logging on to computers was *de minimis* is premature at this stage. Id. She argues that she has standing to challenge the rounding of punch-*out* times because standing is not analyzed by claim and says that she has pled that her punch-*in* times were rounded. Id. at 20. She argues that her adequacy to represent the class should be addressed at the class certification stage rather than as a standing issue. Id. at 21. The plaintiff contends that the rounding claims for both punch-in and punch-out times

13

arise out of the same employer policy and rest on the same legal theory. <u>Id.</u> at 21–22. She argues that the complaint adequately pleads that she would be able to satisfy the Rule 23 requirements at class certification. <u>Id.</u> at 22.

Last, the plaintiff argues that the third amended complaint is not the operative complaint. <u>Id.</u> She asserts that the court granted her leave to file the third amended complaint, "but has never approved or accepted" the complaint, so "the Second Amended Complaint (Docket #40) has never been superseded." <u>Id.</u> The plaintiff argues that this case should proceed with the second amended complaint as the operative pleading even if the court dismisses the third amended complaint. <u>Id.</u> at 23.

The defendant rejects the plaintiff's attempts to explain or elaborate on the allegations in the complaint, arguing that the plaintiff cannot amend her complaint via a brief in response to a motion to dismiss. Dkt. No. 111 at 2–3, 6. It contends that what the plaintiff characterizes as legal theories are actually claims, so if (for example) the plaintiff is claiming that all rounding is illegal under Wisconsin law, the plaintiff must clearly plead that claim in the complaint. <u>Id.</u> at 8. The defendant objects to the inclusion of multiple meal period claims in the same count, arguing that the plaintiff's attempt to explain the difference between the sub-claims just makes Count III more confusing. <u>Id.</u> at 10. Discussing the standing argument, the defendant maintains that the plaintiff's statement that standing is not analyzed by claim is "meritless" and contradicted by numerous decisions. <u>Id.</u> at 12 (citing <u>Murthy v. Missouri</u>, 144 S. Ct. 1972, 1988 (2024)). The defendant argues that the third amended

14

complaint is the operative pleading, and that any dismissal should be with prejudice given the plaintiff's repeated failures to draft a sufficient complaint.

B. <u>Analysis</u>

The Seventh Circuit has stated that "all a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief." <u>Luna Vanegas v. Signet Builders, Inc.</u>, 46 F.4th 636, 645 (7th Cir. 2022). In the FLSA context, "a plaintiff will typically meet this bar by alleging that she was owed wages and that those wages were never paid." <u>Id.</u> But "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." <u>Stanard v. Nygren</u>, 658 F.3d 792, 798 (7th Cir. 2011). The court previously determined that the second amended complaint stated a claim. <u>See</u> Dkt. No. 39 at 24. The problem now, however, is that the plaintiff has added so much contradictory and superfluous detail to her allegations in the third amended complaint that neither the defendant nor the court can determine what her claims are.

<u>Stanard</u> is instructive. The district court denied the plaintiff leave to file a second amended complaint because it failed to comply with Federal Rules of Civil Procedure 8 and 10. 658 F.3d at 796. The Seventh Circuit affirmed because the proposed second amended complaint was "unintelligible" due to "rampant grammatical, syntactical, and typographical errors . . . compounded by a vague, confusing, and conclusory articulation of the factual and legal basis for the claims and a general 'kitchen sink' approach to pleading the

15

case." Id. at 798. The appellate court explained that after three attempts, the plaintiff still had not corrected the errors that the district court had identified in the prior complaints and that it was unclear what constituted the "core of the claims." Id. at 799. The Seventh Circuit emphasized that the issue was one of notice:

> To form a defense, a defendant must know what he is defending against; that is, he must know the legal wrongs he is alleged to have committed and the factual allegations that form the core of the claims asserted against him. Deciphering even that much from the second amended complaint is next to impossible. To the extent that discerning the basic legal and factual basis of the claims is not impossible but merely unnecessarily difficult, we restate the primary teaching of *Garst*: A federal court is not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself. *See* [*U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)]. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." Id.

Id. at 799–800. The Seventh Circuit affirmed the district court's decision to dismiss the case with prejudice as "eminently reasonable" given the plaintiff's repeated failures to plead properly despite clear instructions from the court. Id. at 800–01.

Count I is titled "Failure to Properly Compensate Employees Whose Jobs Required Them to Use Their Michels Assigned Computers on a Daily Basis," but the third amended complaint does not clearly describe the time for which the defendant allegedly failed to compensate its employees. Count I alleges that "supervisors would review, approve, and sometimes edit" employees' punch-in times and that the defendant's payroll software rounded "later supervisor edited Fleetfocus punch-in times, rather than the times when the employee

16

punched in on Fleetfocus, to determin [sic] when it should start to pay employees." Dkt. No. 104 at ¶¶52, 54. It alleges that employees were entitled to overtime pay that they would have received had their earlier punch-in times been rounded. Id. at ¶55. But Count I also asserts that employees' workdays began when they *logged into* their computers and that the defendant is liable for liquidated damages for failing to investigate whether employees should have been paid starting when they logged into their computers. Id. at ¶¶53, 56. So is the plaintiff challenging the rounding practice, the practice of supervisors editing punch-in times or the failure to compensate employees for the time spent logging into their computers before their workday began? The second amended complaint challenged only the latter. Adding allegations about rounding and editing punch-in times into the same count has made it unclear what claim(s) the plaintiff wants to pursue and what claims the defendant must defend against. Each of the three possible claims would require different discovery and different defenses.

Count I of the third amended complaint also fails to identify the Wisconsin law the defendant allegedly violated. The complaint cites Wis. Stat. §§109.11(2) and 109.03(6) (Dkt. No. 104 at ¶¶60-61), which discuss liquidated damages and attorneys' fees for wage claims. But Count I does not cite the *substantive* statute the plaintiff claims the defendant violated. This is another regression from the second amended complaint, which alleged that the defendant had violated Wis. Stat. §109.03(1) by failing to pay the plaintiff "all straight time and overtime wages required by Wisconsin law within 31 days of

17

when the work was performed." Dkt. No. 40 at ¶61. Count I of the third amended complaint alleges (without citing authority) that "Wisconsin law requires employers to pay for work activities that they suffered or permitted, as well as for work activities that they required" and that the defendant violated this alleged requirement through some combination of allowing employees "to start their workdays by logging onto their computers before their schedueld [sic] start times" and by rounding later supervisor adjusted punch-in times. Dkt. No. 104 at ¶58. As this court has previously stated, the plaintiff "must identify which sections of the statutes [she] claims the defendant violated, and what exactly the defendant did to violate that section of the statute." Milakovich v. L. J. Ross Assocs., Inc., No. 19-cv-1353-pp, 2020 WL 620186, at *2 (E.D. Wis. Feb. 10, 2020). The third amended complaint fails to do either of those things, because it isn't clear what Wisconsin statute the defendant violated or what acts constitute the violation. The court will dismiss Count I.

Count II fares no better. Count II is titled "Unlawful Rounding of Supervisor Approved/Adjusted Punch-in and Punch-out Times" and challenges the defendant's alleged practice of rounding employees' punch-in and punch-out times. This claim divides employees into two buckets: (1) employees who did not have a computer and/or whose jobs did not require them to use a computer on a daily basis and (2) employees who had a computer and whose jobs required them to use a computer on a daily basis. Dkt. No. 104 at ¶¶64–65. The third amended complaint states that for the first group (the non-computer users), supervisor approved/adjusted punch-in times are "the best

18

available evidence for when they started to perform work each day." <u>Id.</u> at ¶64.
It alleges that for the second group (computer users), the employees' actual
punch-in times are the best evidence of when they started their workday. <u>Id.</u> at
¶65. The allegations supporting Count II are confusing and inconsistent. It is
unclear whether the claim challenges only supervisor edited punches or all
punches. Count II is especially confusing regarding the computer users,
because Count I also challenges the defendant's alleged practice of editing
punch-in times and alleges that employees were working prior to their assigned
start times. The complaint tries to salvage this confusion by explaining that for
the computer users, the remedy provided in Count I and the remedy provided
in Count II are either "complementary" to each other or, if they provide an
employee with credit for the same quarter hour worked, are pled "in the
alternative [sic]." <u>Id.</u> at ¶¶69–70. The portion of the claim regarding punch-*out*
times also is confusing because the complaint does not allege a uniform policy
of rounding punch-out times. The complaint alleges only that the defendant
"sometimes rounded" punch-out times to the prior quarter hour, while alleging
that punch-in times were "uniformly rounded." <u>Id.</u> at ¶17.

Count II's Wisconsin law claim fails both because it does not identify a
statutory basis and because it is unclear what the claim is. The plaintiff
contends that "[e]ven if" Wisconsin law allows rounding, the defendant's
rounding practice violates the law. <u>Id.</u> at ¶67. This fails to give the defendant
fair notice of the claims she's bringing. Whether rounding violates Wisconsin
law is not an alternative legal theory to whether it violates the FLSA; it is a

separate and distinct legal claim. The way the complaint is drafted makes it unclear which of those claims the plaintiff is pursing.

Although the plaintiff tried to clarify Count II in her response brief (with questionable results), the Seventh Circuit has said that it is "axiomatic" . . . "that a plaintiff may not amend his complaint in his response brief." Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011) (citing Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007)). And, as that court also has said, courts are "not obligated to sift through a complaint to extract some merit when the attorney who drafted it has failed to do so himself." Stanard, 658 F.3d at 799–800 (citing Garst, 328 F.3d at 378). The complaint should have been clear the first time. When it isn't clear the *fifth* time, the plaintiff cannot rectify the situation by explanation via response brief. The court will dismiss Count II.

Count III also is unclear. The plaintiff alleges multiple meal break claims under the same heading. The plaintiff first alleges that the defendant may not round the number of hours worked per day after already rounding the employees' punch-in and punch-out times. Dkt. No. 104 at ¶78. That seems to indicate the plaintiff is seeking to recover for the hours lost by rounding. But the plaintiff then asserts that "[t]he effect of [the defendant's] unlawful rounding down of the number of hours worked by its employees per day is that it deducted 0.5 hours from the employee's hours worked for meal periods, even though the employee punched in 29 minutes or less after they punched out for their meal periods." Id. at ¶80. The court is not sure what this paragraph

means. The factual section of the third amended complaint asserts that the defendant had a policy of deducting 0.5 hours from employees' shifts for meal periods. See id. at ¶¶24–25. The court cannot determine how that alleged policy relates to rounding, whether supervisor rounding of punch-in and punch-out times or by rounding down work hours generally. It appears that the meals-deduction policy is different from the rounding practices. Does Count III challenge the rounding, the practice of automatically deducting 0.5 hours regardless of the actual meal break taken or the failure to properly compensate employees for interrupted meal periods? Because it is not clear what claim the plaintiff is pursuing in Count III, the court will dismiss Count III.

The defendant moved to dismiss the third amended complaint in its entirety, but did not present any arguments for dismissing Count IV—the plaintiff's individual claim for interrupted meal breaks. Though that count is unnecessarily wordy and, in places, confusing, it seems to present only a single claim that matches the heading ("Individual Claim for Meal Periods that were Interrupted by Work"). It alleges that the defendant knew that the plaintiff's breaks were interrupted by inventory handling and that she didn't make up those interruptions, that due to the defendant's practices the plaintiff did not have a way to report the interruption-shortened meal breaks and that in cases where the interruptions resulted in meal breaks of less than twenty minutes the defendant should not have deducted the breaks. The court will allow the plaintiff to proceed with her individual claim for interrupted meal breaks.

21

Because the plaintiff has had several opportunities to draft a proper complaint, the court will dismiss Counts I, II and III of the third amended complaint with prejudice. And because the court is dismissing the class and collective action claims, the court also will deny as moot the pending motion for class certification.

Finally, the plaintiff's contention that the third amended complaint is not the operative complaint is absurd. She states that the court granted her leave to file the third amended complaint, "but has never approved or accepted" the complaint, and reasons that that means that the second amended complaint never has been superseded. In a case where the parties are represented by counsel and the plaintiff has paid the filing fee, there is no procedure for a court to "approve" or "accept" an amended complaint. The plaintiff files the amended complaint and the defendant either answers it or seeks its dismissal. No intervening "approval" or "acceptance" by the court is required by the rules. It is true that after the plaintiff has used her one, "matter of course" amendment under Fed. R. Civ. P. 15(a)(1), she must seek the court's permission to amend any further. Fed. R. Civ. P. 15(a)(2). But once the court grants that leave, there is no requirement that the court approve the amended pleading the court gave the party leave to file. Here, the plaintiff filed a motion seeking leave to file a third amended complaint. Dkt. No. 53. The court granted that motion, dkt. no. 100 at 3, after which the plaintiff filed the third amended complaint, dkt. no. 104. The third amended complaint most certainly *is* the

operative complaint; the defendant must answer the only claim remaining from that operative complaint, which is Count IV.

## IV.    Conclusion

The court **GRANTS IN PART** the defendant's motion to dismiss the third amended complaint. Dkt. No. 108.

The court **ORDERS** that Counts I, II and III of the third amended complaint are **DISMISSED WITH PREJUDICE**.

The court **DENIES AS MOOT** the plaintiff's motion for class certification. Dkt. No. 73.

The court **ORDERS** that the defendant must answer Count IV of the third amended complaint by the end of the day on **September 2, 2025**. By the end of the day on **September 11, 2025**, the parties must submit a joint proposed amended Rule 26(f) report containing their proposed schedule for the remainder of this case.

Dated in Milwaukee, Wisconsin this 12th day of August, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**